**United States District Court**
**For the Northern District of California**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID McKAY et al., | No. C-06-1377 MMC |
| Plaintiffs, | **ORDER GRANTING GRUICH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; VACATING HEARING** |
| v. | |
| CHRISTIAN HAGESETH et al., | (Docket No. 59) |
| Defendants. | |

Before the Court is the motion for summary judgment filed June 28, 2007 by defendants Frank Gruich, Jr. and Gruich Pharmacy Shoppe (jointly, "Gruich defendants"). Plaintiffs David McKay, Sheila McKay and the Estate of John McKay have filed a consolidated opposition; the Gruich defendants have filed a reply. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for resolution without oral argument, see Civil L.R. 7-1(b), hereby VACATES the August 3, 2007 hearing on the matter, and rules as follows.

## BACKGROUND[1]

The instant action arises out of the successful suicide attempt of John McKay ("John") on August 2, 2005, at his mother's home in Menlo Park. Plaintiffs are John's

---

[1] All statements of fact contained in this section are undisputed.

1  parents, David ("David") and Sheila ("Sheila") McKay, individually and on behalf of John's
2  estate. At the time the instant action was filed, defendants were Christian Hageseth, M.D.
3  ("Hageseth"); JRB Solutions, Inc., and JRB Health Solutions, LLC (collectively, "JRB");
4  Benjamin Kreis ("Kreis"), Gregg Tuttle ("Tuttle"), and the Gruich defendants. Plaintiffs have
5  voluntarily dismissed Hageseth due to the pendency of criminal proceedings against him,
6  and have notified the Court of a tentative settlement with JRB, although JRB has not yet
7  been dismissed from the action. The Court previously has dismissed Kreis and Tuttle for
8  lack of personal jurisdiction. Consequently, the Gruich defendants are the only remaining
9  defendants actively litigating the instant action.
10        Frank Gruich, Jr. owns and is the "pharmacist-in-charge" of Gruich Pharmacy
11 Shoppe, which is located in Biloxi, Mississippi. (See Gruich Dep. at 14:9-13, 78:2-13.)
12 JRB operates a website that "provides the software" for pharmacists to receive online
13 orders for prescription drugs. (See Kreis Dep. at 22:1-23:15.)
14        On June 11, 2005, John ordered ninety 20-mg capsules of fluoxetine from the
15 website www.usanetrx.com, (see Cherepinsky Decl. Ex. F (Police Report) at PFID 00046-
16 47), which was "an affiliate website of [JRB]," (see Kreis Dep. at 16:8-20). "Fluoxetine is an
17 antidepressant medication that is the generic form of Prozac." (See Cherepinsky Decl. Ex.
18 S (Scott Report) at 2.) The order required that John fill out an online questionnaire, in
19 which John stated his "specific reason for ordering [fluoxetine]" was "[t]reatment for the
20 symptoms of adult attention deficit disorder in relation to depression," and that his "specific
21 symptoms" were "[m]oderate depression and major attention deficit." (See Cherepinsky
22 Decl. Ex. F (Police Report) at PFID 00055-56.) Hageseth approved the prescription
23 approximately three hours and twenty minutes after John placed his order. (See id. at
24 PFID 00046-47.) The prescription was later received by the Gruich defendants "at some
25 point between June 11, 2005 and June 13, 2005," (see id Ex. L (Resp. to Special Interrog.)
26 at 6:15-16), and thereafter filled by the Gruich defendants, (see Gruich Dep. at 171:6-10).
27 Thereafter, on June 13, 2005, the Gruich defendants shipped the prescription from
28 Mississippi, and it arrived in Menlo Park on June 16, 2005. (See Cherepinsky Decl. Ex. F

1  (Police Report) at PFID 00046-47.)

2  Sometime during the "last week of July" 2005, John returned from visiting with a
3  friend, Timothy Hogan ("Hogan"), in Minnesota. (See Hogan Dep. at 62:5-18.) "[A] couple
4  [of] days before he left" Minnesota, John told Hogan "that he had attempted suicide before .
5  . . and that he thought he was going to do it again." (See id. at 55:10-17.)

6  On August 1, 2005, at 8:08 a.m., John created a suicide note on his laptop
7  computer. (See Cherepinsky Decl. Ex. I (Gitkos Report) at 5.) At 12:27 p.m. on the same
8  date, John visited "'a website listing ways to commit suicide; including items required,
9  chances of success and side effects if you survive,'" (see Cherepinsky Decl. Ex. G (Garrick
10 Report) at 20-21 (quoting Police Report at PFID 00022-23)).

11 At 4:01 a.m. the following morning, John called Hogan and left a voicemail message
12 informing Hogan of his intent to commit suicide, stating, "'You are one of my best friends,'"
13 and "'This is not your fault.'" (See Cherepinsky Decl. Ex. G (Garrick Report) at 21 (quoting
14 Hogan Dep. at 11:21-12:11).) Later that afternoon, Sheila and John's brother, William,
15 returned home and discovered John inside a car in the McKays' garage, with the engine
16 running. (See Sheila McKay Dep. at 127:5-128:22.) William used a baseball bat to break
17 open one of the car windows and moved John outside, where Sheila attempted to
18 administer CPR. (See Sheila McKay Dep. at 128:25-129:19.) When asked later by the
19 police about what she saw upon discovering John, Sheila noted that a "garden hose was
20 poking out of the exhaust pipe and leading into the driver's side window of the car" and that
21 "there was a sock stuffed in the exhaust pipe apparently to keep the hose in place and
22 socks were also stuffed into the window to provide and seal against air escaping." (See
23 Cherepinsky Decl. Ex. F. (Police Report) at PFID 00023-24.) John was pronounced dead
24 at 6:41 p.m. on August 2, 2005. (See id. at PFID 00021, 00061.) He was nineteen years
25 old. (See id. at PFID 00001.)

26 Toxicology tests revealed that John's "Peripheral Blood and Vitreous Humor
27 Samples" contained "Ethyl Alcohol, Acetaminophen and Fluoxetine." (See id. at PFID
28 00016.) Following John's death on the evening of August 2, 2005, Sheila discovered a

1 bottle of fluoxetine in John's shaving kit; "90 [20-mg] capsules were prescribed . . . and 47
2 remained." (See id. at PFID 00005.) The parties agree that John exhibited behavior, prior
3 to the date he ordered Prozac from defendants on June 11, 2005, that demonstrated he
4 was at risk of suicide. (See Motion at 8:1-23; Opp. at 3:9-15.)

5       Plaintiffs allege the following causes of action against the Gruich defendants: (1)
6 pharmacist negligence; (2) aiding and abetting medical negligence by Hageseth; (3) a
7 survival action brought by the Estate for medical expenses incurred by John; and (4)
8 unlawful business practices in violation of § 17200 of the California Business and
9 Professions Code. Plaintiffs also allege that each of the defendants was a joint venturer
10 and co-conspirator with each of the others. (See SAC ¶ 11.) The Gruich defendants now
11 move for summary judgment with respect to all claims asserted against them.

## LEGAL STANDARD

13       Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as
14 to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions,
15 answers to interrogatories, and admissions on file, together with the affidavits, if any, show
16 that there is no genuine issue as to any material fact and that the moving party is entitled to
17 judgment as a matter of law." See Fed. R. Civ. P. 56(b), (c). Material facts are those that
18 may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
19 248 (1986). A dispute as to a material fact is "genuine" if the evidence is such that "a
20 reasonable jury could return a verdict for the nonmoving party." See id. The Court may not
21 weigh the evidence. See id. at 255. Rather, the nonmoving party's evidence must be
22 believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." See
23 United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989)
24 (en banc) (citing Liberty Lobby, 477 U.S. at 255).

25       The moving party bears the initial responsibility of informing the district court of the
26 basis for its motion and identifying those portions of the pleadings, depositions,
27 interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the
28 absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317,

4

1 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving
2 party's burden is discharged when it shows the court there is an absence of evidence to
3 support the nonmoving party's case. See id. at 325.
4      A party opposing a properly supported motion for summary judgment "may not rest
5 upon the mere allegations or denials of [that] party's pleading, but . . . must set forth
6 specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e); see
7 also Liberty Lobby, 477 U.S. at 250. The opposing party need not show the issue will be
8 resolved conclusively in its favor. See Liberty Lobby, 477 U.S. at 248-49. All that is
9 necessary is submission of sufficient evidence to create a material factual dispute, thereby
10 requiring a jury or judge to resolve the parties' differing versions at trial. See id.

**DISCUSSION**

**A. Pharmacist Negligence**

13      In their cause of action for pharmacist negligence, plaintiffs allege the Gruich
14 defendants are directly liable for negligently filling the prescription, written by Hageseth, for
15 fluoxetine. (See SAC ¶ 36.) The Gruich defendants argue they are entitled to summary
16 judgment with respect to the cause of action asserted against them for pharmacist
17 negligence because plaintiffs have no evidence that the Gruich defendants' filling of John's
18 prescription for fluoxetine was a legal cause of John's death. In particular, relying on Tate
19 v. Canonica, 180 Cal. App. 2d 898, 915 (1960), the Gruich defendants argue that John's
20 suicide was an "independent intervening force."
21      Subsequent to the decision in Tate, the California Supreme Court decided Nally v.
22 Grace Cmty. Church of the Valley, 47 Cal. 3d 278 (1988), and the California Court of
23 Appeal decided Jacoves v. United Merchandising Corp., 9 Cal. App. 4th 88 (1992), both of
24 which recognize circumstances under which liability for suicide may be imposed on a
25 theory of negligent provision of care. In the instant case, plaintiff has submitted sufficient
26 evidence from which a reasonable trier of fact could find the Gruich defendants breached a
27 duty of care to John by filling the prescription for fluoxetine. The Court, however, need not
28 determine whether liability for the Gruich defendants' asserted breach can be imposed

under such circumstances, because the evidence is undisputed that the fluoxetine John obtained from the Gruich defendants was not a cause of his death.[2]  In his sworn expert report, the Gruich defendants' expert, Robert Garrick, M.D. ("Garrick"), attests that "[t]o a reasonable degree of medical probability, the fluoxetine dispensed by Gruich to Decedent on or about June 11, 2005 did not cause or contribute to Decedent's August 2, 2005 suicide, Decedent's ultimate death, and Plaintiffs' alleged injuries." (See Cherepinsky Decl. ¶ 9 and Ex. G at 26 (emphasis in original).  Likewise, plaintiffs' expert, Charles L. Scott, M.D. ("Scott"), when asked at his deposition whether "the fluoxetine John received from Frank Gruich cause[d] him to be suicidal," responded, "It is my opinion that it did not." (See Cherepinsky Decl. ¶ 23 and Ex. R (Scott Dep.) at 147:12-14.)  Moreover, plaintiffs expressly concede in their opposition that they "do not contend the drug caused John's suicide." (See Opp. at 1 n.2.)

Accordingly, the Court will GRANT the Gruich defendants' motion for summary judgment with respect to the cause of action for pharmacist negligence.

**B. Liability for Negligence of Others**

Plaintiffs additionally assert a number of theories of liability, by which plaintiffs contend the Gruich defendants are liable for medical negligence on the part of Hageseth. With respect to Hageseth, plaintiffs have submitted sufficient evidence from which a reasonable trier of fact could find Hageseth's psychiatric treatment of John fell below the standard of care applicable to psychiatrists, as a result of Hageseth's not "conducting a full psychiatric exam, a suicide risk assessment, an evaluation of his medical history, an evaluation of his substance use history, working to establish a therapeutic alliance, coming up with a treatment plan based on the psychiatric evaluation and other information and risk factors, and then arranging appropriate follow-up care as a result of that evaluation," (see Derish Decl. Ex. M at 4-15; Derish Decl. Ex. L (Scott Dep.) at 107:14-22), and that if John

---

[2] Under California law, plaintiffs must show that the Gruich defendants' "negligence was a substantial factor in causing [plaintiffs] harm." See CACI 400; see also Mitchell v. Gonzales, 54 Cal. 3d 1041 (1991) (adopting and explaining test).

6

1 had been provided appropriate treatment, his suicide "would have been prevented," (see id.
2 at 107:5-8).

3 Assuming plaintiffs' claim against Hageseth for medical negligence would survive a
4 motion for summary judgment, plaintiffs nonetheless have failed, for the reasons set forth
5 below, to establish a triable issue exists with respect to the Gruich defendants' liability for
6 Hageseth's negligence.

**1. Joint Venture**

8 Plaintiffs allege that "each of the defendants was at all material times . . . [a] joint
9 venturer [with] . . . the remaining defendants, and in doing the things alleged, was acting
10 within the course and scope of that relationship." (See SAC ¶ 11.) The Gruich defendants
11 move for summary judgment with respect to plaintiffs' joint venture theory of liability on the
12 ground that plaintiffs have no evidence to prove the existence of a joint venture.

13 Where a joint venture exists, the "negligence of one joint venturer or of his
14 employees acting in connection with the joint venture is imputed to the other joint
15 venturers." See Dixon v. City of Livermore, 127 Cal. App. 4th 32, 42 (2005) (internal
16 quotation and citation omitted). "A joint venture exists when there is 'an agreement
17 between the parties under which they have a community of interest, that is, a joint interest,
18 in a common business undertaking, an understanding as to the sharing of profits and
19 losses, and a right of joint control.'" Connor v. Great Western Savings and Loan Ass'n, 69
20 Cal. 2d 850, 863 (1968) (quoting Holtz v. United Plumbing & Heating Co., 49 Cal. 2d 501,
21 506-07 (1957); see also Jeld-Wen, Inc. v. Superior Court, 131 Cal. App. 4th 853 (2005)
22 (internal quotation and citation omitted) ("There are three basic elements of a joint venture:
23 the members must have joint control over the venture (even though they may delegate it),
24 they must share the profits of the undertaking, and the members must each have an
25 ownership interest in the enterprise.").

26 Here, as the Gruich defendants point out, although Hageseth, JRB, and the Gruich
27 defendants were all involved in the sale of fluoxetine to John, there is no evidence that the
28 Gruich defendants had any ownership interest in the internet drug sales business

7

established by JRB.  In the absence of such ownership interest, there can be no joint venture as defined under California law.  See id.  Moreover, there is no evidence to support a finding that the Gruich defendants had any control over Hageseth or JRB, or that JRB or Hageseth had any control over the manner in which Gruich filled prescriptions.  Finally, although JRB paid the Gruich defendants a fixed amount for each prescription filled, (see Cherepinsky Decl. Ex. K (Gruich Production of Documents, Set One) at 0018), payments of such nature do not constitute the sharing of profits.  See, e.g., Connor, 69 Cal. 2d at 615 (finding no joint venture where asserted joint venturers did not "share in the profits or losses that the other might realize or suffer" and "neither had an interest in the payments received by the other"); Gradus v. Hanson Aviation, Inc., 158 Cal. App. 3d 1038, 1058 (1984) ("[T]he mere fact that one party is to receive benefits in consideration of services rendered . . . does not, as a matter of law, make him a . . . joint venturer.").

Accordingly, plaintiffs have not raised a triable issue with respect to liability based on joint venture.

### 2. Conspiracy

Plaintiffs allege the Gruich defendants are liable as co-conspirators with the other defendants.  (See SAC ¶¶ 11, 15(e), 59.)  In particular, plaintiffs allege the Gruich defendants "conspired with . . . defendant Hageseth . . . in violating laws governing the practice of medicine in California," and that Hageseth is liable for medical negligence under California law because he "was not licensed or registered to practice medicine in California,"[3] his prescription of fluoxetine was "in violation of the California Medical Practices Act," and he "was negligent and careless in his prescribing for and treating . . . John McKay's medical condition."  (See id. ¶¶ 25, 28, 29-30, 59.)

The Gruich defendants move for summary judgment with respect to plaintiffs' conspiracy theory on the ground there is no underlying tort that can serve as a basis for conspiracy liability, and, in any event, no showing of causation.

---

[3] It is undisputed Hageseth was not so licensed or registered.

8

Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." See Applied Equipment Corp. v. Litton Saudi Arabia Limited, 7 Cal. 4th 503, 510-511 (1994). "By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy." Id. at 511. The elements of civil conspiracy are "the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design." See id. at 511 (internal quotation and citation omitted); see also Kidron v. Movie Acquisition Co., 40 Cal. App. 4th 1571, 1581 (1996) (setting forth three elements of civil conspiracy: "(1) the formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct").

As the Gruich defendants point out, the district courts that have considered the matter under California law have held that negligence cannot serve as an underlying tort for civil conspiracy. See, e.g., Koehler v. Pulvers, 606 F. Supp. 164, 173 n.10 (S.D. Cal. 1985) (noting lack of "California decisional authority imposing liability for conspiring to commit negligence" and observing that "allegation of civil conspiracy appears inherently inconsistent with the allegation of an underlying act of negligence"); Mendez v. County of Alameda, 2005 WL 3157516 at *12 (N.D. Cal. 2005) (holding "the law does not recognize a conspiracy to commit negligence"; observing "[i]t is a non sequitur to speak of parties intentionally agreeing to fail to exercise due care"). The Court finds the above-referenced authorities persuasive.

Additionally, to the extent plaintiffs attempt to base liability on a conspiracy to provide inadequate psychiatric care, there is no evidence that the scope of any conspiracy involving the Gruich defendants extended beyond the provision of medications, and there is no evidence that the Gruich defendants were involved in any aspect of Hageseth's psychiatric treatment of John, other than the filling of the prescription for fluoxetine. As discussed above, the evidence is undisputed that Hageseth's prescription of fluoxetine,

filled by the Gruich defendants, was not a cause of John's suicide.

Accordingly, plaintiffs have not raised a triable issue with respect to conspiracy.

### 3. Aiding and Abetting

Plaintiffs' cause of action against the Gruich defendants for aiding and abetting is based on their allegation that the Gruich defendants "enabl[ed] [Hageseth] to prescribe fluoxetine to John in violation of the California Medical Practices Act." (See SAC ¶ 49.)

#### a. California Business and Professions Code § 2052

The Gruich defendants' first argument is that plaintiffs cannot base their aiding and abetting claim on § 2052 of the California Business and Professions Code because there is no private right of action with respect to such statute. Section 2052 provides that any person who practices medicine in California "without having at the time of so doing a valid, unrevoked, or unsuspended certificate" is "guilty of a public offense, punishable by" fine and/or imprisonment. See Cal. Bus. & Prof. Code § 2052(a). Section 2052 further provides: "Any person who conspires with or aids or abets another to commit any act described in subdivision (a) is guilty of a public offense, subject to the punishment described in that subdivision." See Cal. Bus. & Prof. Code § 2052(b). The Court agrees with the Gruich defendants that § 2052, by its terms, is a criminal statute setting forth no private right of action. Accordingly, to the extent plaintiffs seek to base liability of the Gruich defendants on a theory of aiding and abetting, plaintiffs must rely on common law, rather than directly on § 2052. See Cal. Bus. & Prof. Code § 2052(c) ("The remedy provided in [§ 2052] shall not preclude any other remedy provided by law.").

#### b. Common Law Aiding and Abetting

Under the common law, liability for aiding and abetting exists if the defendant "(a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." See Casey v. U.S. Bank National Association, 127 Cal. App. 4th 1138, 1144 (2005).

The Gruich defendants move for summary judgment on the ground that aiding and abetting liability requires the existence of an intentional tort, and that no such tort has been alleged. The Court has previously rejected such argument in denying JRB's motion to dismiss, (see Order Granting in Part and Denying in Part Motion to Dismiss, filed April 6, 2007, at 4:4-10 ("With respect to the aiding and abetting claim, the Court is unpersuaded by JRB's argument that liability may be imposed only for aiding and abetting an intentional tort.")), and is not persuaded by the Gruich defendants' arguments to the contrary.

Nevertheless, there is no evidence that the Gruich defendants gave "substantial assistance" to Hageseth in any way other than by filling the prescription for fluoxetine, and, as discussed above, plaintiffs cannot demonstrate that fluoxetine was a cause of John's suicide. Consequently, plaintiffs cannot show that any acts of aiding and abetting by the Gruich defendants caused plaintiffs harm.

Accordingly, the Court will GRANT the Gruich defendants' motion for summary judgment on plaintiffs' cause of action for aiding and abetting.

**C. Unfair and Unlawful Business Practices**

The Gruich defendants move for summary judgment with respect to plaintiffs' cause of action for violation of California Business and Professions Code § 17200, on the ground plaintiffs lack standing to assert such claim.

California Business and Professions Code § 17204 provides that a § 17200 action may be brought by "any person who has suffered injury in fact and has lost money or property as a result of . . . unfair competition." See Cal. Bus. & Prof. § 17204. As the Gruich defendants argue, and for the reasons set forth above, plaintiffs cannot demonstrate that Hageseth's prescription for fluoxetine, filled by the Gruich defendants, was a cause of John's suicide. Accordingly, plaintiffs cannot demonstrate they suffered "injury in fact" or "lost money or property" as a result of any asserted unfair competition by the Gruich defendants.

Accordingly, the Court will GRANT the Gruich defendants' motion for summary judgment with respect to plaintiffs' cause of action for violation of § 17200 of the California

Business and Professions Code.

### D. Survival Action

Plaintiffs allege, in support of their survival action, that "[a]s a direct and legal result of the acts and omissions of defendants . . . , John McKay was compelled to and did employ the services of paramedics and other health care providers, for medical treatment and care, and did incur medical expenses and other expenses[.]" (See SAC ¶ 55.)  A survival action is brought by "a decedent's personal representative or successor in interest on the decedent's cause of action" to recover "the loss or damage that the decedent sustained or incurred before death," excluding "damages for pain, suffering, or disfigurement."  See Cal. Code Civ. Proc. § 337.34.  "The survival statutes do not create a cause of action."  See Quiroz v. Seventh Avenue Center, 140 Cal. App. 4th 1256, 1264 (2006).  Rather, they "merely prevent the abatement of the cause of action of the injured person, and provide for its enforcement by . . . the personal representative of the deceased."  See id. at 1264 (internal quotation and citation omitted).  As plaintiffs have not demonstrated a triable issue of material fact exists with respect to any of their other causes of action as asserted against the Gruich defendants, their survival action against such defendants likewise fails.

Accordingly, the Court will GRANT the Gruich defendants' motion for summary judgment with respect to plaintiffs' survival action.

## CONCLUSION

For the reasons set forth above, the Gruich defendants' motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: September 7, 2007

MAXINE M. CHESNEY
United States District Judge